2008 OK CR 17

**Kevin Wayne DURANT, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2007–164.**

Court of Criminal Appeals of Oklahoma.

May 23, 2008.

Brian Dell, attorney at law, Oklahoma City, for defendant at trial and appeal.

Pam Stillings, Assistant District Attorney, Oklahoma City, for the State at trial.

W.A. Drew Edmondson, Attorney General, William R. Holmes, Assistant Attorney General, Oklahoma City, for the State on appeal.

## SUMMARY OPINION

C. JOHNSON, Vice–Presiding Judge.

¶1 Appellant, Kevin Wayne Durant, was convicted by the Honorable Twyla Mason Gray, District Judge, after a bench trial in Oklahoma County District Court, Case No. CF–2005–5092, of Taking Clandestine Photographs (21 O.S.2001, § 1171(B)), After Conviction of a Felony. On February 23, 2007, the trial court sentenced Appellant to six years in prison, provided that on successful completion of certain behavioral programs, the balance of the sentence would be suspended. This appeal followed.

¶2 Appellant raises the following propositions of error:

1. The statute under which Appellant was convicted is unconstitutional.

2. The video evidence offered against Appellant must be suppressed as the product of an illegal search.

3. The evidence was insufficient to show Appellant knowingly activated the video camera.

¶3 After thorough consideration of the propositions, and the entire record before us on appeal, including the original record, transcripts, and briefs of the parties, we reverse. The evidence presented at the bench trial showed that Appellant had used a digital camera, hidden in a backpack, to take photographs of a female student in the lobby of an Oklahoma City community college without her knowledge. The evidence supported a conclusion that Appellant had intentionally tried to position the backpack so that the camera, nestled inside an open compartment of the pack, would capture images of the student's body underneath her skirt.

■ ¶4 In Proposition 1, Appellant makes several arguments, one of which is that the crime defined in § 1171(B) does not apply to persons photographed in a public place. Appellant raised this issue before trial in a Motion to Dismiss filed May 26, 2006, and after a hearing held August 3, 2006, the trial court denied the motion. The statute under which Appellant was charged provides, in relevant part:

[Anyone] who uses photographic, electronic or video equipment in a clandestine manner for any illegal, illegitimate, prurient, lewd or lascivious purpose with the unlawful and willful intent to view, watch, gaze or look upon any person without the knowledge and consent of such person *when the person viewed is in a place where there is a right to a reasonable expectation of privacy* [is guilty of a felony].

21 O.S.2001, § 1171(B) (emphasis added).

¶5 Appellant claims that any attempt to clandestinely photograph any part of a person, *while the person is in a public place,* is not a crime under § 1171(B). The State focuses, instead, on the part of the body that is being photographed, and the person's attempts to protect it from view in a public place.

¶6 The plain language of § 1171(B) refers to one's reasonable expectation of privacy while "in" a particular place, not to one's expectations about a particular place "on" one's body. Section 1171 even offers examples of where a person would reasonably expect the kind of privacy that the statute aims to protect, including any "place of residence," as well as locker rooms, dressing rooms, and restrooms. 21 O.S.2001, § 1171(A). Under the doctrine of *ejusdem generis*,[1] these specific examples should guide our understanding of what the Legislature intended as the kinds of "places" to which the statute applies.[2] Given that this

---

1. A traditional rule of statutory construction, the doctrine of *ejusdem generis* holds that where general words follow particular words in a statute, the general words will be considered as applicable only to things of the same general character, kind, nature, or class as the particular things, and cannot include wholly different things. *Gilbert v. State,* 1988 OK CR 268, ¶6, 765 P.2d 1208, 1210.

2. Subsection A of § 1171 punishes—as a misdemeanor—anyone who unlawfully and willfully "hides, waits, or otherwise loiters in the vicinity of any private dwelling house, apartment building, any other place of residence, or in the vicinity of any locker room, dressing room, restroom or any other place where a person has a right to a reasonable expectation of privacy...." The last clause (adding locker rooms, dressing rooms, *etc.*) was added in 2001, by the same piece of

list includes only places that are closed to the general public—and "places" where a person may be, not "places" on a person's body—we conclude that the conduct at issue here was simply not contemplated by the Legislature when § 1171(B) was enacted.

¶ 7 We have long held that statutes defining crimes should be strictly construed:

A statute will not be enlarged by implication or intendment beyond the fair meaning of the language used, or what their terms reasonably justify, and will not be held to include offenses and persons other than those which are clearly described and provided for, although the court in interpreting and applying particular statutes may think the legislature should have made them more comprehensive.

*State v. Tran*, 2007 OK CR 39, ¶ 8, 172 P.3d 199, 200. As we held in *State v. Young*, 1999 OK CR 14, ¶ 27, 989 P.2d 949, 955, "[i]t is not our place to interpret a statute to address a matter the Legislature chose not to address, even if we think that interpretation might produce a reasonable result."

¶ 8 The purpose of strict construction is not to reward those who commit acts which should be punishable. Rather, it is to ensure that when liberty is at stake, all citizens have fair and clear warning of what conduct is prohibited, and, equally important, the severity of punishment for any infraction.[3]

¶ 9 We do not believe that § 1171(B), as currently written, covers the clandestine taking of photographs of a person who is in a public place, regardless of what part of the body the perpetrator focuses on. The fact

that Appellant was found to have purposefully photographed the complainant from a vantage point that would reveal underclothes is reprehensible, but does not alter our understanding of the statute.

¶ 10 Accordingly, we find merit in Proposition 1 of Appellant's brief, and conclude that his conviction must be **REVERSED**. Our resolution of this issue renders Appellant's remaining arguments moot.

### DECISION

¶ 11 The Judgment and Sentence of the district court is **REVERSED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2008), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

CHAPEL and A. JOHNSON, JJ., concurs and joins Judge LEWIS's writing.

LEWIS, J., specially concurs.

LUMPKIN, P.J., dissent.

LEWIS, J., specially concurs.

¶ 1 This case is not about an individual's right to privacy against government intrusion as found in the Fourth Amendment to the United States Constitution or Article 2, § 20 of the Oklahoma Constitution. This case is about the legislative branch's role in defining criminal activity, for the State cannot protect its citizens from the criminal activity of others, unless the legislature, by its clear intent, has made the "activity" criminal. They have not done so in this instance.

---

legislation that added the crime at issue here (as Subsection B). Laws 2001, ch. 386, § 2. Although Subsections A and B describe slightly different offenses, their common structure and word choice suggest that the word "place" means the same thing in each. Neither subsection distinguishes between the parts of a person's body. Indeed, each subsection makes it a crime to look upon (and, in the case of Subsection B, to disseminate an image of) *any* part of another person's body in the situations described.

3. Recently, faced with very similar facts, we reached the same conclusion about the applicability of § 1171(B) in *State v. Ferrante*, Case No. S–2007–31 (March 7, 2008) (not for publication). In that case, we affirmed a district court's order

dismissing prosecution, after the court found the defendant's conduct (clandestinely attempting to take photographs under a woman's skirt in a public place) was not covered by § 1171(B). Shortly after *Ferrante* was decided, the Legislature amended § 1171. See 2008 Okla.Sess.Laws Ch. 38 (HB 2606), *available at* http://www.oscn.net/applicat ions/oscn/DeliverDocument.asp?Cite ID=451486. The substance of that amendment is instructive. The amendment makes no substantive changes or clarifications to Subsection B. Rather, the amendment creates another crime entirely, Subsection C, which appears to refer quite specifically to the conduct at issue here—and which punishes that conduct not as a felony, but as a misdemeanor.

¶ 2 The clear reading of the statute in question here requires that the "person viewed **is in a place** where there is a right to ... privacy ...."[1] There is no room for any other interpretation in this statute. The legislative branch has simply not kept up with the fantasies of the deviant mind and the technology used to fulfill those abhorrent fantasies. Most criminal statutes are written as a reaction to some type of conduct or in an attempt to curb future conduct, deemed to be "criminal." The conduct in this case, abhorrent as it may be, is simply not defined as criminal by this statute.[2]

¶ 3 While the judges of this Court may have personal opinions about what conduct should be criminal, we are not the branch of government that is empowered to define an activity as criminal activity. This Court must be bound by the rules of statutory construction so that every citizen is given due process.

¶ 4 This Court must uphold due process, just as powerfully as we uphold all other personal rights guaranteed by the constitutions of the United States and this State, so that the rights of all people are protected against unreasonable governmental abuses. It is, therefore, with these thoughts in mind that I specially concur.

¶ 5 I am authorized to state that Judges CHAPEL and A. JOHNSON join in this writing.

LUMPKIN, Presiding Judge, dissent.

¶ 1 The Court's decision today not only misconstrues the intent of the Legislature, but also ignores the duty of the State to protect its citizens from the criminal activity of others. The United States Supreme Court, this Court, and courts all over this nation have perceived expectation of privacy as an individual right. When the Legislature amended this statute in 2001 to include subsection B, it was doing so to protect this individual right. The language of the statute reads in part:

Every person who uses photographic, electronic or video equipment in a clandestine manner for any illegal, illegitimate, prurient, lewd or lascivious purpose with the unlawful and willful intent to view, watch, gaze or look upon any person without the knowledge and consent of such person when the person viewed is in a place where there is a right to a reasonable expectation of privacy ...

21 O.S.2001 § 1171(B). In reviewing the plain language of the statute, the Legislature made it clear the offense occurs when one takes these photographs in a clandestine manner with the intent to "view, watch or gaze upon any person without the knowledge and consent of such person." The offense is not determinative on where the photographs were taken, but occurs with the taking of the pictures which violate the individual's expectation of privacy. The Court is interpreting this statute to apply only to an expectation of privacy in a place. The majority opinion states it must consider the examples set forth in subsection A of the statute as interpretative aids to what the Legislature intended as the kinds of places the statute applies to. What the Court fails to do here is realize Subsection B is a distinctly separate and different crime than that set out in Subsection A of the statute. The purpose of Subsection B is to protect an individual's expectation of privacy. If the Court is strictly construing the statute, is it telling us our expectation of privacy is only protected in the places set out in Subsection A?

¶ 2 By interpreting the statute as the Court does in this case, it is overlooking the fact that the expectation of privacy is in one's covered body. Many criminals do not take photographs of people's faces, hands, or other areas of the body not typically clothed and continually visible in public places. An individual would not have a reasonable expectation of privacy to these unclothed places on their body, no matter where they were. However, one clothes the parts of their body they want to keep private. One expects to have an expectation of privacy in the covered parts of their body regardless of whether they are in a private or public place.

---

1. 21 O.S.2001, § 1171(B) [Emphasis added].

2. As noted in the Court's Opinion, the legislature has since addressed this behavior.

¶ 3 The Court cites to language in *State v. Young*, 1999 OK CR 14, ¶ 27, 989 P.2d 949, 955, which held, "[I]t is not our place to interpret a statute to address a matter the Legislature chose not to address, even if we think that interpretation might produce a reasonable result." However, this is exactly what the Court is doing in this case. The Court today is interpreting the Legislative intent to be contradictory of the Legislature's continual passage of laws for the protection of its citizens from this type of activity. The Court references a recent amendment to Section 1171 to add a subsection C which specifically addresses the conduct in this case. The potential problem, if the Court is consistent in the future, will be the Court continuing to interpret Subsections B and C as being restricted by the places enumerated in Subsection A, since that is the methodology the Court used to deny applicability of Subsection B in this case. Hopefully, that will not happen and the intent of the Legislature will finally be followed.

¶ 4 I previously stated that the unpublished decision in *State v. Ferrante*, S–2007–31 (March 7, 2008), informed women who desire to wear dresses that they have no expectation of privacy as to what they have covered with the dress. This decision states the same thing, and tells those individuals who desire to take these photographs to go ahead and do so because there is no avenue for you to be prosecuted. This was clearly not the intent of the Legislature when it amended this statute in 2001. Now, the Legislature has confirmed that intent with the enactment of Subsection C to Section 1171.